UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTRUPY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JON SIGVE OFTEDAHL, <br><br> Defendant. | Case No. 23-cv-10948 <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, Entrupy, Inc. ("**Entrupy**"), by and through its attorneys, for its complaint against Defendant Mr. Jon Oftedahl ("**Defendant**") alleges as follows.

**INTRODUCTION**

1. Entrupy brings this case because it is the subject of a groundless smear campaign by an individual who is not associated with the company in any capacity whatsoever.

2. Entrupy is a world leader in the luxury authentication marketplace. Through the use of its proprietary system and software, Entrupy combats the sale of counterfeit merchandise by arming people and businesses with the tools they need to authenticate genuine products.

3. Defendant is an individual residing in Norway who is not affiliated with Entrupy and has no connection to Entrupy whatsoever. Defendant is not an Entrupy customer. Defendant is not a former employee of Entrupy. Defendant has never used the Entrupy software or system. To the best of Entrupy's knowledge, Defendant has never even purchased an item authenticated by the Entrupy system.

4. Even though Defendant has no relationship to Entrupy and has never used Entrupy's services, Defendant called into question the accuracy of the Entrupy system and launched an aggressive marketing crusade against the company. Defendant spent countless hours scouring the internet to find the names and contact information for hundreds of Entrupy's customers or other persons associated with Entrupy.

5. Once Defendant had the list, Defendant sent multiple confused and rambling messages to those individuals (as well as media outlets in New York City) alleging there was a scheme to defraud people and suggesting that Entrupy's system was somehow ineffective or inaccurate.

6. To be clear, Entrupy does not condone or participate in fraudulent activity. To the contrary, Entrupy and its dedicated team of professionals are committed to fighting counterfeiters throughout the world. Additionally, the Entrupy system is incredibly reliable and capable of detecting inauthentic merchandise with a high degree of accuracy.

7. As soon as Entrupy was alerted to Defendant's false and misleading communications, it immediately sent Defendant a cease-and-desist letter demanding, *inter alia*, that Defendant (a) immediately refrain from further contact with Entrupy's customers; (b) provide Entrupy with a complete list of all persons contacted by Defendant; and (c) issue a retraction statement and apology to all persons impacted by Defendant's communications.

8. Defendant responded that he would comply with all of the above. Unfortunately, Defendant then decided to delete all of the evidence from his email account, refused to send a retraction statement, and stopped responding to Entrupy's communications entirely.

9. Defendant has left Entrupy with no recourse, other than to initiate this proceeding. Therefore, Entrupy respectfully requests this Court enjoin Defendant from further publishing false

or defamatory statements, compensate Entrupy for its damages, and punish Defendant for his brazen and willful conduct.

## PARTIES

10.     Plaintiff Entrupy, Inc. is a corporation registered in the State of Delaware. Entrupy maintains its an address located at 750 Lexington Avenue, 7th Floor, New York, NY 10022.

11.     Upon information and belief, Defendant Jon Sigve Oftedahl is an individual with an address of Mindeåsen 14 4560, Vanse, Norway.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between a citizen of a State and a citizen of a foreign state.

13.     This Court has personal jurisdiction over Defendant pursuant to New York CPLR § 301. Defendant's defamatory statements were published to multiple entities located within the State of New York. Defendant published the statements to The New York Times, Luxury Daily, WWD Women's Wear Daily, and the Fashion Law Institute, among others. The New York Times maintains an office at 620 Eighth Avenue, New York, NY 10018; Luxury Daily maintains an office at 590 Madison Avenue, 21st Floor, New York, NY 10022; WWD Women's Wear Daily maintains an office at 475 Fifth Avenue, 3rd Floor, New York, NY 10017; and the Fashion Law Institute maintains an office at 150 W. 62nd Street, New York, NY 10023. Defendant directed his defamatory statements to individuals located in this judicial district. Further, Entrupy maintains an address located in Manhattan, and the harm caused by Defendant's defamatory statements have been realized within this judicial district.

14. Venue in the Southern District Court of New York is proper under 28 U.S.C. 1391(b)(2), because Defendant published his defamatory statement to multiple news outlets that reside in Manhattan, including The New York Times, Luxury Daily, WWD Women's Wear Daily, and the Fashion Law Institute. The majority of prospective witnesses and anticipated evidence will be located in this judicial district. The harm resulting from Defendant's defamatory statements has been realized within this judicial district.

## FACTUAL BACKGROUND

**Entrupy's Business and Award-Winning Software.**

15. Entrupy is the exclusive owner of the proprietary Entrupy system, which is the premier brand in luxury good authentication technology and related services. Among other things, Entrupy licenses its proprietary technology and system to various entities around the world, including resellers of luxury handbags. At a high level, the Entrupy System analyzes the authenticity of various luxury goods and, if accurate, provides a certificate of authentication for qualifying merchandise. If the recipient of an authentication certificate believes the certificate was issued in error, there is a detailed dispute resolution process, which includes an independent review from experts familiar with luxury authentications.

16. Entrupy's technology has been featured in some of the most read publications around the world; including, the Wall Street Journal, Forbes, Business Insider, Fashion United, Vogue, GQ, TechCrunch, CNBC, among many others. Entrupy has received accolades from various industry and trade organizations, securing one of the Edison Awards in the field of Business and Consumer Protection as well as an AI Break Through Award in the field of Biometrics. Entrupy is an active participant in top industry organizations, including, the La Maison des Startups LVMH; union des fabricants Unifab; and the Retail Innovation Center.

17.     Given the popularity of its platform, as well as the reliability and accuracy of its proprietary software and systems, Entrupy has become a strong source identifier for trustworthy assessments of luxury goods.  Entrupy worked tirelessly to earn its reputation as the leader in luxury good authentications.

**Defendant and His Tortious Conduct.**

18.     On or about December 4, 2023, Defendant drafted and published an email to Entrupy's customers and news media outlets located in the state of New York.

19.     Among other things, Defendant stated: "Entrupy Verified Business is defrauding people selling fake Dior Lady bags with authentic certificates. These fakes are very low quality costing $100 in the black market. How is this possible? Could this pose a problem to your business? I have checked 7 certificates and they are all in the Entrupy online database. Kind regards Jon Oftedahl PS Some of you have got a previous mail with the pictures (16mb file containing screendumps checked for virus) in another mail. You can have more of various types of fake Dior Lady bags with Entrupy certificates. You will be chocked [sic] by the low quality, still people are buying them thinking they are authentic!"

20.     The subject of the email was "Entrupy certificates are authentic - $3500 Dior bags are fake."

21.     The communication did not identify, by name, any business other than "Entrupy."

22.     Defendant did not physically inspect any of the handbags that were the subject of his email communication to Entrupy's customers.

23.     Defendant did not purchase any of the handbags that were the subject of his email communication to Entrupy's customers.

24.     Defendant has never used Entrupy software to authenticate Dior Lady bags.

25. Defendant has never used Entrupy software to authenticate any merchandise.

26. Defendant is not affiliated with or sponsored or endorsed by Entrupy in any capacity whatsoever.

27. Defendant is not a former employee of Entrupy.

28. Defendant has no experience using or operating any of Entrupy's proprietary technology.

29. Defendant is not in possession of any information suggesting that Entrupy is an active participant in a scheme to defraud people.

30. Defendant is not in possession of any information regarding the size, volume, or number of products that the Entrupy system authenticates on a daily basis.

31. Defendant is not in possession of any information regarding the portion of merchandise deemed authentic by the Entrupy system compared to the portion of merchandise deemed unidentified.

32. Defendant has not conducted any scientific studies or assessments on the reliability or accuracy of Entrupy's technology or ability to authenticate luxury goods.

33. Defendant cannot substantiate a claim that the Entrupy system, as a whole, is unreliable or inaccurate.

34. Defendant cannot substantiate a claim that Entrupy has committed fraud.

35. Defendant cannot substantiate that the handbags referenced in his December 2023 email are inauthentic.

**Defendant's Statements Are False or Misleading.**

36. Recipients of Defendant's message, particularly media outlets, are likely to erroneously believe (i) Entrupy sold Dior Lady handbags; (ii) the handbags were counterfeits; (iii) Entrupy knew the handbags were counterfeits; (iv) Entrupy issued certificates of authenticity even though it knew the bags were inauthentic; and (v) Entrupy did so to defraud others. All of these statements are literally false.

37. First, Entrupy does not sell luxury merchandise. Instead, Entrupy provides the technology platform used by other re-sellers to assist with the authentication process. Entrupy is not a re-seller of Dior Lady bags.

38. Second, Entrupy is investigating the merits of whether the handbags at issue are inauthentic. At that time of filing this complaint, there is insufficient evidence to conclude whether the handbags are inauthentic.

39. Third, even if the handbags are inauthentic, Entrupy had no knowledge of this fact.

40. Fourth, Entrupy would not have issued certificates of authenticity if it knew the handbags were inauthentic.

41. Fifth, Entrupy is not part of a scheme to defraud others.

42. Therefore, Defendant's communication is literally false.

43. Defendant's communication is misleading because it fails to reference any business other than Entrupy.

44. Entrupy is the only business identified in the subject line of the email communication.  Entrupy is the only business identified in the body of Defendant's message.

45. Even if Defendant had intended to identify the actual reseller of the merchandise at issue, the communication is still misleading because recipients of the communication are likely to believe, in err, that Entrupy is somehow an active participant in, or is otherwise associated with the alleged fraudulent activity of the reseller.

46. Defendant's statement is also misleading because it wrongly implies that the Entrupy system is inaccurate or unreliable based on a small sample size of handbags.

47. Moreover, Defendant carbon copied (*i.e.*, cc:ed) openly in his email communications the names and contact information of many of the other Entrupy customers receiving his message.

48. Given that the target audience consisted almost exclusively of Entrupy's customers, a reasonable recipient of Defendant's communication would believe, in err, that Entrupy was the subject or source of the fraudulent activity alleged therein.

49. Therefore, Defendant's communication was either (i) literally false; or (ii) highly misleading.

**Defendant Acted Maliciously.**

50. At the same time that Defendant was emailing Entrupy's clients and news outlets, he was also taunting Entrupy's executive team with separate email communications.

51. Defendant boasted that he was retired and had ample time to pursue this matter. Specifically, Defendant stated, "I am going to pursue this matter, I am retired [sic] so have ample time. I will send my findings to TikTok Shop and also to every media listed on your site that ran features about the Entrupy technology and/or the TikTok Shop coop. Regards Jon Oftedahl."

52. After Defendant received a cease-and-desist letter from Entrupy, he attempted to cover his tracks by deleting his electronic communications.

53. Defendant stated, "I am sorry to inform you that all emails have been deleted." Defendant claims that the emails were "accidentally" deleted.

54. When pressed to simply recover the emails from his trash folder, Defendant stated that the "emails have been permanently deleted from my trash folder" as well.

55. On information and belief, Defendant deliberately and willfully destroyed evidence he knew would be relevant to reasonably foreseeable litigation.

56. Defendant admitted that the emails were destroyed after he had received a cease-and-desist letter from Entrupy's outside counsel.

57. Therefore, Defendant's defamatory communication was sent with actual malice.

**Defendant Agreed to Retract His Statements.**

58. On or about December 11, 2023, Defendant responded to Entrupy's cease-and-desist letter, in relevant part as follows:

> Agreeing to resolve this matter I will:
>
> 1. Immediately and permanently cease and desist from further contacting Entrupy or its customers
>
> 2. Provide Entrupy with a complete list of all persons or entities I contacted concerning Entrupy
>
> 3. Retract statements described in your letter of Desember 8th, 2023 by providing a statement and apology (specific language to be agreed upon by all parties before dissemination) to each person I contacted

59. Defendant and Entrupy exchanged numerous communications on December 11, and 12 working on, among other things, precise language to be used in Defendant's retraction statement and apology.

60. A true and correct copy of the revised retraction statement and apology that Defendant sent to Entrupy is copied below.

> Hello,
>
> I am writing to clarify a recent communication that you may have received from me about Entrupy (cc:ed here). Specifically, I wrote to you concerning the sale of potentially inauthentic Dior Lady bags that are available for purchase online.
>
> My prior communication may have wrongly suggested that Entrupy is part of a scheme to defraud people. It was not my intention to associate Entrupy with any fraudulent activity whatsoever. To be clear, I have no reason to believe Entrupy is defrauding anyone. While I attempted to contact Entrupy regarding the handbags at issue, I did not provide them with more than 24 hours' notice before I contacted you.
>
> Please accept my sincere apologies for any inconvenience that I may have caused you. I am not affiliated with, sponsored or endorsed by, or otherwise associated with Entrupy or its licensees in any capacity whatsoever. I am also not associated with any of the purchasers, sellers, manufacturers, or providers of the handbags referenced in my prior correspondence. I simply found advertisements for the handbags online and decided to contact you of my own accord. I independently collected your contact information, which was not provided to me by Entrupy.
>
> I have not inspected any of the handbags at issue nor do I have any first-hand knowledge regarding the authentication of those items. Likewise, I have never used Entrupy's proprietary system or authentication related software. I have now learned more about Entrupy and its technology and I believe they are dedicated to preventing the sale of counterfeit merchandise.
>
> If you have any additional questions or concerns, I would ask that you direct them to support@entrupy.com.

61. Entrupy indicated that the revised retraction statement would be acceptable and instructed Defendant to release the statement.

62. Entrupy indicated that time was of the essence for the retraction statement because the longer Defendant's defamatory statements languished with Entrupy's customers, the larger the ripple effect of its harm. Therefore, Entrupy made it clear that the retraction statement would have to be sent no later than December 13, 2023.

63. Unfortunately, Defendant did not send the retraction statement to Entrupy's customers.

64. Defendant stopped responding to Entrupy's communications. Defendant requested that Entrupy direct its future communications regarding this matter to another individual. Entrupy reached out to that individual but has not received any substantive response.

## FIRST CAUSE OF ACTION

(Libel/Libel Per Se)

65. Entrupy repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

66. Defendant intentionally and maliciously published a written statement to numerous third parties containing false allegations of fact about Entrupy. Among other things, Defendant falsely accused Entrupy of "defrauding people."

67. Defendant's statements were made negligently or with a reckless disregard for the truth.

68. Defendant's published statements concerning Entrupy are false and bring Entrupy into disrepute or contempt and impeach its integrity and reputation. Defendant's false statements have not only called the integrity of the Entrupy system into question, but have also exposed Entrupy to public contempt, ridicule or disgrace.

69. Defendant's false statements tend to injure Entrupy in its trade, business, and profession.

70. Defendant deliberately made false and misleading statements about Entrupy in an attempt to destroy Entrupy's name and reputation.

71. Defendant's false statements have caused harm to and irreparably injured Entrupy.

72. Defendant contacted hundreds of Entrupy's customers with his false and disparaging statements. Entrupy has had to expend considerable time, resources, and money to countering the defamatory allegations raised against it. At the time of this complaint, the monetary loss suffered by Entrupy is ongoing.

73. Accordingly, Entrupy is entitled to special and general damages resulting from Defendant's false and misleading statements of fact about Entrupy, which currently far exceed $75,000, exclusive of interests and costs.

## SECOND CAUSE OF ACTION

(Defamation by Implication)

74. Entrupy repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

75. To the extent any components of Defendant's published statements are truthful, Defendant's message conveys false suggestions, impressions and implications arising from those otherwise truthful statements.

76. Specifically, Defendant strategically juxtapositions his words to associate Entrupy with fraudulent activity, and to otherwise call into question the reliability or accuracy of Entrupy's technology as a whole.

77. Defendant published his communication with knowledge that his words would cause recipients to wrongly believe that Entrupy participated in a fraudulent scheme or that its authentication system was unreliable or inaccurate.

78. Recipients of Defendant's communication would reasonably discern and impart Defendant's defamatory inferences.

79. Defendant's malicious and willful conduct demonstrates that he intended or endorsed the defamatory inferences contained within his message.

### THIRD CAUSE OF ACTION

(Trade Libel/Commercial Disparagement)

80. Entrupy repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

81. Defendant has published false statements that disparage Entrupy and its technology platform.

82. These statements constitute injurious falsehoods and trade libel, which *inter alia*, impugn the integrity of Entrupy and the quality of its services.

83. Defendant has published his false statements to hundreds of Entrupy customers and media outlets by means of email.

84. Recipients of Defendant's statements are likely to understand Defendant's defamatory meaning and understand that Defendant's statements are directed at Entrupy and its services.

85. Entrupy has been specifically harmed by Defendant's defamatory statements.

86. Defendant has no privilege to make his false and harmful statements.

87. As a direct and proximate result of Defendant's unlawful acts, Entrupy has suffered and will continue to suffer significant monetary and reputational injury in amounts that will be proven at trial but that are believed to far exceed $75,000, exclusive of interests and costs.

### PRAYER FOR RELIEF

WHEREFORE, Entrupy respectfully requests that the Court enter judgment in its favor as follows: a. Declaring that Defendant's conduct constitutes libel and libel per se of a corporation

under the laws of the State of New York; b. Declaring that Defendant's conduct constitutes defamation by implication under the laws of the State of New York; c. Declaring that Defendant's conduct constitutes trade libel and/or commercial disparagement under the laws of the State of New York; d. Permanently enjoining Defendant from publishing and disseminating the statements constituting libel, defamation by implication and trade libel and/or commercial disparagement identified above; e. Directing Defendant issue the retraction statement he initially agreed to send to all persons contacted by Defendant with the defamatory messages above; f. Awarding Entrupy damages in an amount proven at trial and believed to be in excess of $75,000, plus interest; g. Awarding Entrupy its attorneys' fees and costs incurred in bringing this action; h. Awarding Entrupy with significant punitive damages for Defendant's willful and egregious conduct; and i. Awarding such other and further relief as the Court deems proper

## DEMAND FOR JURY TRIAL

Plaintiff, Entrupy, requests a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b) and 38(c).

Dated: December 18, 2023  
      New York, New York

Respectfully submitted,

ENTRUPY, INC.

_____  
Shane M. Rumbaugh  
Bar No. 5985957  
**RUMBAUGH LAW PLLC**  
136 Madison Avenue, Floors 5 & 6  
New York, NY 10016  
+1 (347) 614-4022  
Shane@rumbgh.com

*Counsel for Entrupy, Inc.*